**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Rolando Mendez, | No. CV-12-285-PHX-SMM |
| Plaintiff, | |
| vs. | **MEMORANDUM OF DECISION AND ORDER** |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court is Scottsdale Police Officer Aaron Bolin's ("Defendant") motion for summary judgment and accompanying statement of facts, which is fully briefed. (Docs. 60, 61.) After considering the parties' extensive briefing, the Court will grant Defendants' motion for summary judgment.

## BACKGROUND

The undisputed material facts of this case are as follows: on January 16, 2011, Defendant was on duty at the P.F. Chang's Marathon in Scottsdale. (Doc. 61-1 at 12.) Defendant was working to keep non-runners and non-race participants off the closed roadway during the race. Id. Defendant noticed Jorge Rolando Mendez ("Plaintiff") riding his bicycle on the left side of the closed road.[1] Id. In Defendant's police report he stated that

---

[1] Plaintiff was holding a sign to the crowd which read "Protect our Constitution." (Doc. 61-1 at 12.) Plaintiff was carrying the sign intending to "put out the message" in connection with his strongly-held beliefs regarding immigration legislation. (Doc. 61-2 at 25-26.)

he rode up to Plaintiff and informed him that the road was closed to all vehicle traffic for the race and that he needs to get off the road and ride on the sidewalk. Id. At first Plaintiff complied with Defendant's instructions and got off the road, but shortly after, Plaintiff left the sidewalk and entered the closed roadway in the bicycle lane. Id. Seeing Plaintiff on the road again, Defendant instructed Plaintiff to stop and pull over onto the sidewalk. Id. Once both Defendant and Plaintiff were off the road, Defendant asked Plaintiff to provide his driver's license or evidence of identification. Id. However, Plaintiff refused. (Doc. 61-2 at 28-29.) Defendant warned Plaintiff that if he refused to produce evidence of identification, Defendant would have to arrest him. (Docs. 61-3 at 49, 61-2 at 29.) Plaintiff began to move away from Defendant (Doc. 61-2 at 34), at which time Defendant took hold of Plaintiff's arm to handcuff him (Doc. 61-1 at 12). Plaintiff admits that he stiffened his arm as a reaction to the arrest. (Doc. 61-2 at 35.) Consequently, Defendant delivered a knee strike[2] to Plaintiff's right leg. (Doc. 61-1 at 13.) The knee strike landed on Plaintiff's leg and he immediately began to yell and howl in pain. Id.

Plaintiff initially did not request medical assistance, but later when he was being transported to jail, he requested medical attention. (Doc. 61-2 at 20.) When paramedics arrived on the scene, Plaintiff's running pants were rolled up revealing a large vertical scar on his knee. (Doc. 61-1 at 13.) Plaintiff, formerly a professional and amateur soccer player, had two knee surgeries to his right knee and one prior surgery to his left knee. (Docs. 61-2 at 12-14, 61-12 at 4.) Plaintiff testified that he has no recollection of any aspect of the surgery on his left knee, or where it was performed. (Doc. 61-2 at 14.) The pre-existing surgical scar on Plaintiff's knee had been hidden from Defendant's view until after the paramedics arrived. Id. Upon examination of Plaintiff's right knee, the paramedic found absolutely no sign of recent injury—no cut, scrape, bruising, swelling or other trauma. (Docs. 61-9 at 8, 61-10 at 3.) Plaintiff complained of pain and decreased range of motion, but the paramedic noted that this was a subjective finding which is patient dependent. (Docs. 61-9

---

[2] A police officer delivers a "knee strike" by using his knee to deliver force to the subject's thigh area. (Doc. 61-14 at 3-4.)

- 2 -

at 8-9, 61-10 at 3.) No objective signs of injury were found by the paramedic. Id. Later, an MRI of Plaintiff's right knee was taken which showed multiple degenerative changes including advanced tricompartmental osteoarthritis, but no definitive injury from the knee strike or subsequent fall to the ground. (Doc. 61-12 at 2.)

Plaintiff was arrested and charged with (1) failure to obey a police officer (A.R.S. § 28-622(A)), (2) failure to provide driver's license or evidence of identity (A.R.S. § 28-1595(B)), (3) failure to ride on the right side of the road (A.R.S. § 28-815(A)), and (4) riding/driving on a closed road (Scottsdale Revised Code ("S.R.C.") § 17-4). (Doc. 61-1 at 3.) Following a trial, Plaintiff was convicted of violating A.R.S. § 28-622(A), failure to comply with a police officer and held responsible for the civil traffic violation of riding/driving on a closed road, pursuant to S.R.C. § 17-4. (Doc. 61-8.) However, Plaintiff was not found guilty under A.R.S. § 28-1595(B), failure to provide driver's license or evidence of identity and A.R.S. § 28-815(A), failure to ride on the right side of the road. Id.

Plaintiff filed his original complaint in Maricopa County Superior Court and Defendant removed the case to this Court on October 2, 2012. (Doc. 1 and Doc. 1 at 2.) Subsequently, Defendant moved for summary judgment along with his supporting statement of facts. (Docs. 60, 61.) Plaintiff responded together with a statement of controverting facts and Defendant replied. (Docs. 66, 65, 69.)

**STANDARD OF REVIEW**

**I.  Summary Judgment**

In a summary judgment motion, the court construes all disputed facts in the light most favorable to the non-moving party. Ellison v. Robertson, 357 F.3d 1072, 1075 (9th Cir. 2004). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). A dispute about a fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for

1  the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see Jesinger,
2  24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the
3  governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S.
4  at 248.

5       The principal purpose of summary judgment is "to isolate and dispose of factually
6  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against
7  a party who "fails to make a showing sufficient to establish the existence of an element
8  essential to that party's case, and on which that party will bear the burden of proof at trial."
9  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The
10 moving party need not disprove matters on which the opponent has the burden of proof at
11 trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not
12 produce evidence "in a form that would be admissible at trial in order to avoid summary
13 judgment." Id. at 324. However, the non-movant may not rest upon the mere allegations or
14 denials of the party's pleadings, but must set forth specific facts showing that there is a
15 genuine issue for trial. See Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith
16 Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d
17 1044, 1049 (9th Cir. 1995).

18 **II.    Qualified Immunity**

19      "The doctrine of qualified immunity protects government officials from liability for
20 civil damages insofar as their conduct does not violate clearly established statutory or
21 constitutional rights of which a reasonable person would have known." Pearson v. Callahan,
22 555 U.S. 223, 231 (2009). When a defendant asserts qualified immunity, a court must make
23 two distinct inquires, the "constitutional inquiry" and the "qualified immunity inquiry." See
24 Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional
25 inquiry" asks whether, when taken in the light most favorable to the non-moving party, the
26 facts alleged show that the official's conduct violated a constitutional right. Saucier v. Katz,
27 533 U.S. 194, 201 (2001). If so, a court then turns to the "qualified immunity inquiry" and
28 asks if the constitutional right was clearly established at the relevant time. Id. at 201-02. This

1  second inquiry "must be undertaken in light of the specific context of the case, not as a broad
2  general proposition." Id. at 201.

3  Subsequently, in Pearson, the Supreme Court altered this rigid framework and held
4  that Saucier's procedure should not be regarded as an inflexible requirement. 555 U.S. at 227.
5  Judges "should be permitted to exercise their sound discretion in deciding which of the two
6  prongs of the qualified immunity analysis should be addressed first in light of the
7  circumstances in the particular case at hand." Id. at 242. In this case, the Court finds no
8  reason to deviate from Saucier's traditional analysis.

9  Further, in this case to determine whether a constitutional right was violated, the Court
10 must determine whether the Defendant's use of force was reasonable under the totality of the
11 circumstances. Graham v. Connor, 490 U.S. 386, 388 and 396 (1989). A claim that a law-
12 enforcement officer used excessive force to effect a seizure is governed by the Fourth
13 Amendment's "reasonableness" standard. See id. at 386. Determining the objective
14 reasonableness of a particular seizure under the Fourth Amendment requires a careful
15 balancing of the nature and quality of the intrusion on the individual's Fourth Amendment
16 interests against the countervailing government interests at stake. Plumhoff v. Rickard, No.
17 12-1117, 2014 WL 2178335, at * 7 (U.S. May 27, 2014).

18 In this case, the Court analyzes whether the use of force is reasonable from the
19 perspective of a reasonable officer on the scene, rather than with the 20/20 vision of
20 hindsight. Id.; see Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001) (stating that a
21 court evaluates force based on the officer's "contemporaneous knowledge of the facts."); see
22 also Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994) (the reasonableness of an arrest or
23 seizure must "be assessed by carefully considering the objective facts and circumstances that
24 confronted the arresting officer."). Thus, courts allow for the fact that police officers are
25 often forced to make split-second judgments - in circumstances that are tense, uncertain, and
26 rapidly evolving - about the amount of force that is necessary in a particular situation. Id.

27 Our Fourth Amendment jurisprudence has long recognized that the right to make an
28 arrest or investigatory stop necessarily carries with it the right to use some degree of physical

1  coercion or threat thereof to effect it. Graham, 490 U.S. at 396. If an officer reasonably, but
2  mistakenly, believed that a suspect was likely to fight back, the officer would be justified in
3  using more force than in fact was needed. Saucier, 533 U.S. at 204-05. The "reasonableness"
4  inquiry in an excessive force case is an objective one: the question is whether the officers'
5  actions are "objectively reasonable" in light of the facts and circumstances confronting them,
6  without regard to their underlying intent or motivation. Graham, 490 U.S. at 397; see also
7  Terry v. Ohio, 392 U.S. 1, 21 (1968) (stating that in analyzing the reasonableness of a
8  particular search or seizure, "it is imperative that the facts be judged against an objective
9  standard").

**DISCUSSION**

**I.   Qualified Immunity**

Plaintiff claims that Defendant violated his Fourth Amendment right to be free from excessive force because Defendant unnecessarily administered the knee strike causing Plaintiff severe physical injury. (Doc. 65 at 4.) Defendant contends that he is entitled to qualified immunity because his response (i.e. the knee strike) to Plaintiff's actions was objectively reasonable under the Fourth Amendment and did not violate any clearly established constitutional right. (Doc. 60 at 9.) Based on the doctrine of qualified immunity, Defendant seeks summary judgment on Plaintiff's excessive force claim. (Doc. 60 at 9-15.)

Given Plaintiff's misdemeanor convictions, Defendant had probable cause to arrest Plaintiff at the scene. At no point prior to the handcuffing did Plaintiff provide his name or other evidence of identification to Defendant. (Doc. 61-3 at 41-42.) Plaintiff admits to stiffening his arm and moving away from Defendant when being placed under arrest. (Doc. 61-2 at 34-35.) Plaintiff asserts that his arm stiffening was simply a reflexive reaction by almost anyone who is suddenly and unexpectedly restrained by the arm. (Doc. 61-2 at 35.) However, Plaintiff's subjective intention is irrelevant. See Graham, 490 U.S. at 397. A court objectively analyzes the reasonableness of force used. Id. Plaintiff has not presented any evidence which demonstrates that such physical behavior by a suspect does not constitute resisting arrest, or that the use of a single knee strike is unreasonable or excessive when a

1  suspect resists arrest in that manner. Plaintiff's conduct amounts to what the Ninth Circuit
2  classifies as "active resistence" because he resisted the officer's attempt to arrest him. Brooks
3  v. City of Seattle, 599 F.3d 1018, 1029 (9th Cir. 2010). Defendant reacted to Plaintiff's
4  resistence as he is trained to do by delivering a single knee strike to Plaintiff's leg.

    Further, Plaintiff has failed to present any evidence which demonstrates that
Defendant's single knee strike caused Plaintiff any physical injuries. (Docs. 61-9 at 8, 61-10
at 3.) Plaintiff complained of pain and decreased range of motion, but the paramedic found
that this is a subjective finding, which is patient dependent. (Docs. 61-10 at 3, 61-9 at 8-9.)
Plaintiff has not produced any evidence which shows that he has or had suffered any physical
injury or harm because of Defendant's knee strike. Force used by Defendant to arrest
Plaintiff was *de minimis* and necessary. See Woods v. City of Garden Grove, 395 Fed. Appx.
467, 469 (9th Cir. 2010). The knee strike does not amount to excessive force because
Plaintiff provides no evidence of injury. See id.; Saucier, 533 U.S. at 208-09. After due
consideration of the facts of this case, the Court finds that Defendant's use of force is
reasonable under the totality of the circumstances; there is no constitutional violation. Even
when viewing the facts regarding Defendant's use of force in the light most favorable to
Plaintiff, no triable issue of fact is created. Defendant is entitled to qualified immunity.
Injuries to Plaintiff, if any, were minor and solely the accidental consequence of lawful
police behavior. The Court need not proceed to the second step of the Saucier analysis and
determine whether Plaintiff has been able to demonstrate that Defendant's actions violated
clearly established constitutional law. See Johnson v. County of Los Angeles, 340 F.3d 787,
791-92 (9th Cir. 2003).

## II.     Plaintiff's State Law Claims

In his complaint, Plaintiff further alleged state law claims of assault and battery against Defendant. (Doc. 1 at 18-19.) Defendant, in the motion for summary judgment, contends that Defendant's conduct is privileged under A.R.S. 13-409, which provides that a person is justified in threatening or using physical force against another if, in making an arrest, all of the following factors are present: (1) a reasonable person would believe that

such force is immediately necessary to effect the arrest; (2) such person makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and (3) a reasonable person would believe the arrest or detention is lawful. (Doc. 61 at 16.) Here, Plaintiff failed to prosecute his claim of assault and battery in his response to Defendant's motion for summary judgment. (Doc. 65.) Therefore, the Court grants Defendant's motion for summary judgment on the state law claims of assault and battery.

Moreover, as the Court has already concluded above, Defendant's use of force was not excessive. Defendant informed Plaintiff that if Plaintiff did not produce any evidence of identification, Defendant would have to arrest him. (Doc. 61-3 at 50.) The Court finds that any reasonable person in Defendant's position would have believed the arrest to be lawful as Plaintiff was not complying with Defendant's instructions. (Docs. 61-3 at 50, 61-2 at 29.) Therefore, the requirements of A.R.S. § 13-409 are met in this case and Defendant is entitled to summary judgment on the claims of assault and battery.

**III. Plaintiff's Punitive Damages Claim**

Summarily, Plaintiff in his complaint claims that he is entitled to punitive damages because Defendant falsely arrested him, committed assault, mistreated Plaintiff and intentionally deprived Plaintiff of his constitutional rights. (Doc. 1 at 23.) Defendant contends that under A.R.S § 12-820.04 "neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." (Doc. 60 at 17.) Here, Plaintiff again failed to respond to Defendant's motion for summary judgment on his punitive damages claim. (Doc. 65.) Therefore, the Court grants Defendant's motion for summary judgment on the punitive damages claim.

Moreover, Plaintiff has failed to satisfy the requisite conditions for a successful punitive damages claim. Under Arizona law, punitive damages are awarded in order to punish the wrongdoer and deter others from emulating the same conduct. Linthicum v. Nationwide Life Ins. Co., 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). The punitive damages standard in Arizona requires "something more" than gross negligence. Rawlings

v. Apodaca, 151 Ariz. 149, 161, 726 P.2d 565, 577 (1986).  The "something more" is the evil mind, which is satisfied by evidence "that defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud" or defendant's "conscious and deliberate disregard of the interest and rights of others." Gurule v. Illinois Mut. Life and Casualty Co., 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987). Here, Plaintiff did not provide any evidence to show that Defendant's actions were motivated by spite or malice or that Defendant consciously and deliberately acted to disregard Plaintiff's rights. The Court has already found that Defendant acted within the scope of his employment, that he was entitled to qualified immunity, and that Defendant's actions are privileged. Therefore, the Court grants Defendant's motion for summary judgment on the punitive damages claim.

Accordingly,

**IT IS HEREBY ORDERED** granting Defendants' motion for summary judgment on all counts. (Doc. 60.)

**IT IS FURTHER ORDERED** that Defendant is dismissed from this case.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this case.

DATED this 9th day of June, 2014.

_____
Stephen M. McNamee
Senior United States District Judge